William Gerald COOMES, Appellant,

v.

ROBERTSON LUMBER COMPANY and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

May 10, 1968.

Hugh D. Moore, William E. Rummage, Owensboro, for appellant.

George S. Wilson, III, Wilson & Wilson, Owensboro, for appellees.

MILLIKEN, Judge.

The Workmen's Compensation Board denied compensation to the appellant, William Gerald Coomes, a forty-eight year old employee of the appellee, Robertson Lumber Company, and the circuit court affirmed the Board's decision on appeal. The appeal to us presents the question of whether the Board had to grant compensation to Coomes as a matter of law.

This is a case where no one saw the accident, and little circumstantial evidence was available to suggest exactly how it happened, yet happen it did, and during the course of Coomes' employment with the Lumber Company. Coomes drove a truck for the Company and worked in its lumber yard. On the day of his injury, September 10, 1964, he went home for lunch at noon and returned to his work about an hour later, unloading two-by-fours from a truck. A salesman for the Company saw him after his return to work and testified that Coomes appeared normal at that time, but within an hour later, when the salesman went into the lumber yard for a purpose he could not recall, he saw Coomes stagger to his feet with a bloody forehead, found

him dazed, led him to a stack of lumber where he set him down, then telephoned Coomes' wife to come for him. The salesman said he recalled seeing nothing on the ground which would suggest what caused Coomes to fall or what he may have struck when he fell, but there was a truck with lumber on it "and some—a couple of pieces may be pulled out three or four feet."

Mrs. Coomes, who worked at night and slept in the daytime, took her husband home, cleansed his cut head, put him to bed and returned to bed herself. She said that she had "kind of dozed off to sleep myself. In a few minutes I felt the bed just quiver and he already had just stiffened out." She said his body was so stiff she could not manage him so she called an ambulance to take him to the hospital where examination revealed a severe fracture of his skull. She testified that her husband appeared to be all right when he was home for lunch that noon.

The Workmen's Compensation Board denied compensation because of its *"conclusion that the evidence of this record fails to establish a causal connection* that demonstrates abnormalities or compensable injuries resulting from the accident which occurred on September 10, 1964. * * * On the basis of the medical and factual proof included, we are not able to find that the plaintiff sustained a compensable injury in the course and out of his employment with this defendant on or about September 10, 1964." (Emphasis ours.)

The Board's conclusion is stated too broadly, for it is apparent that Coomes' injury occurred in the course of his employment. The "causal connection" which the Board could not satisfy itself about goes to the other vital concept in Workmen's Compensation law—the "arising out of the employment". It is axiomatic that for an injury to be compensable under the Workmen's Compensation law it must occur in the course of, and arise out of, the employment. Like due process, these two

factors are concepts of law, and the evidence offered to sustain a claim must satisfy both those concepts if compensation is to be allowed. We do not imply that they are concepts so clear and precise that they could be programmed in a computer and all Workmen's Compensation cases could be easily solved by pushing a key.

■ Pulsing through all legal concepts such as "due process of law", "the equal protection of the law" and others is our sense of fair play or justice, and the same spirit animates the legal concepts vital to the administration of the Workmen's Compensation law in its limited and specialized field. And in Kentucky, after thirty-five years of experience with the Workmen's Compensation law, the legislature found it necessary in 1950 again to direct specifically that the Workmen's Compensation law " * * * shall be liberally construed on questions of law, as distinguishable from evidence * * *." KRS 342.004. (This was in the original Workmen's Compensation law as K.S. 4987 and was omitted in the 1942 Revision because KRS 446.080 says all statutes should be liberally construed.) This statutory re-enactment means, if it means anything, that governing legal concepts peculiar to Workmen's Compensation definitely should be construed liberally by this court.

■ What we have before us in the case at bar is a severely injured workman, injured in the course of his employment on his employer's premises, and the Board denying compensation because it could not decide specifically how the injury happened. Coomes was unable to tell what happened, but he had been unloading the lumber truck, and the witness who found him said there was a truck with lumber on it "and some—a couple of pieces may be pulled out three or four feet". Should not our legal concept, "arising out of the employment", be adaptable enough and broad enough for us to conclude that a rebuttable presumption of compensability arises when an employee is found unexplainably injured on his employer's premises in the course of his employment? We think it should be if the admonition of our statute (KRS 342.004) is to be observed.

Dr. William E. Pearson, the neurosurgeon who examined and treated Coomes during his hospitalization after the accident testified a year later that he found Coomes had a " * * * large skull fracture running vertically in the anterior parietal region down to the left temporal region * * * the patient was somewhat drowsy, dazed and confused." This physician said that someone told him Coomes had seizures or "spells" of some sort for several years before the accident, but he did not know who told him. In any event, Coomes definitely suffered seizures or "spells" *after* the accident which, Dr. Pearson thought, were traumatic in origin and were caused by the accident. He said that Coomes was suffering from a cerebellar disease which affects the coordination of the body as a whole and that the medicine Coomes necessarily was taking might be the cause of it. It was this physician's opinion that Coomes was still totally disabled at the time of his testimony—a year after the accident, but it was difficult to say whether it was permanent.

Dr. James Callis, Coomes' family physician who called Dr. Pearson to the case on the day of the accident, testified a year later that he had treated Coomes twenty-five or thirty times in a period of six to seven years and found no suggestion of Coomes' having grandmal seizures before the accident. He said he had treated him for gout, had removed a tumor from his shoulder, and had treated him for alcoholism on one or two occasions, and that he responded well to treatment. He said arteriograms of Coomes' brain were taken to rule out tumor as the cause of his post-accident seizures and that no tumor was found, and that withdrawal of medication (chiefly dilantin) proved that Coomes' continued cerebellar disorder was not caused by any toxic effects of his medication. Dr. Callis thought his patient had lost

ground during the year. He concluded that since Coomes had no history of grand-mal seizures before the accident it was incredible to him that his patient would have them when he was forty-eight or forty-nine years of age, unless a trauma or a tumor had caused them. He said that Coomes' equilibrium had been affected and that occasionally he had to crawl to get where he wanted to go "and sometimes even with that he will fall over." Dr. Callis said Coomes "is just not capable of taking care of himself right now"; he feared Coomes had suffered a brain injury.

About two months after Dr. Pearson and Dr. Callis had testified, Dr. Everett G. Grantham, a neurosurgeon of Louisville who had helped train Dr. Pearson, examined Coomes and reported his findings. He found no reason why Coomes should not be normal so far as his head injury was concerned. Dr. Grantham found nothing pathological after checking Coomes' blood pressure, gait, cranial nerves, reflexes and cerebellar functioning. Dr. Grantham ruled out a head injury Coomes had suffered in an automobile accident in 1950 as a cause of his trouble, saying that two years was about the limit for subsequent trouble to appear from such an injury.

With the intimation of pre-accident epilepsy or "spells" in the air and the possibility that a 1950 head injury might have teamed-up to cause Coomes' unexplained fall and injury, the Board appointed Dr. Lester Reed, a neurosurgeon, to examine Coomes for the Board and to report his findings. Dr. Reed examined him in December 1965, several months after Dr. Pearson and Dr. Callis had testified, and gave his deposition in late April of 1966. Dr. Reed could find no cerebellar disorder, but said, "I was not able to explain his peculiar gait. I just could not say whether it might be the particular result of a brain injury or not." Dr. Reed thought Coomes was disabled but he did not feel competent to say how much on one examination. He did not believe Coomes' faltering gait was the result of a cerebellar disease, because he said the movement of the upper extremities (the arms) usually showed similar symptoms when the movement of the legs was affected by a cerebellar disease, and he did not notice any such symptoms in Coomes' use of his arms. Three months after Dr. Reed had testified, the Board handed down its opinion denying compensation because the puzzle as to just what had caused Coomes' injury in the course of his employment had not been solved.

As heretofore stated, the "in the course of" and "arising out of the employment" factors are not precise concepts. Larson, in his Workmen's Compensation Law, Section 29.10, says these two factors should not be applied entirely independently; that "they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other. * * * One is almost tempted to formulate a sort of quantum theory of work-connection: that a certain minimum quantum of work-connection must be shown, and if the 'course' quantity is very small, but the 'arising' quantity is large, the quantum will add up to the necessary minimum, as it will also when the 'arising' quantity is very small but the 'course' quantity is very large. But if both the 'course' quantity and 'arising' quantities are small, the minimum quantity will not be met."

We do not know exactly what caused Coomes' injury, but we do know it occurred in the course of his employment. We do not know whether he fell and was injured or whether one or more of the two-by-fours he was unloading slid and struck him on the head. If a fall was the cause of his injury, we do not know what caused it or what he struck when he fell. We do know that there is not a scintilla of competent evidence in this record to show that any fall he might have suffered stemmed from an innately personal cause. Larson comments in Section 10.31, pages 99 and 100, "In a pure unexplained-fall case, there is no way in which an award

can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfies the 'arising' requirement. In appraising the extent to which courts are willing to accept this general but-for theory, then, it is significant to note that most courts confronted with the unexplained fall problem have seen fit to award compensation." The but-for reasoning referred to is that the injury would not have happened but-for the employment, whatever specifically caused it. The origin of the reasoning is the unanimous opinion of the House of Lords construing the English Workmen's Compensation law (upon which most American acts are modeled) in Upton v. Great Cent. R. (1924) A.C. 302 (H.L.) where compensation was awarded for a completely unexplained fall in the course of the employment. For a collection of and analysis of decided cases see Larson, Section 10.31, "Unexplained falls". We think this view conforms to our statutory mandate KRS 342.004 to construe our act liberally on the law.

We are not unmindful of our decision in Stasel v. American Radiator & Standard Sanitary Corp., Ky., 278 S.W.2d 721 (1955) where compensation was awarded for an idiopathic fall in the course of the employment, an epileptic fall onto a hot stove, because the employment placed the employee in increased danger of the effects of such a fall for, in the case at bar, we do not find any competent evidence that an idiopathic fall is involved. (See Larson, Section 12.11 for a discussion and analysis of idiopathic fall cases; and also Blair Fork Coal Co. v. Blankenship, Ky., 416 S.W.2d 716 (1967).

We conclude that Coomes' injury arose out of his employment whether he was struck by sliding lumber while unloading the truck or whether he suffered an unexplained fall, and that he clearly is entitled to compensation for an extended period of temporary, total disability, and that he may be entitled to an award for permanent disability if the Board so finds. The judgment is reversed and the case referred back to the Board for an award of compensation consistent with this opinion.

WILLIAMS, C. J., and HILL, STEINFELD and PALMORE, JJ., concur.

OSBORNE, J., not sitting.

MONTGOMERY, J., dissents.