AK STEEL CORPORATION, Appellant

v.

Beverly ADKINS; Hon. A. Thomas Davis, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2007–SC–000515–WC.

Supreme Court of Kentucky.

May 22, 2008.

Shawn C. Conley, Vanantwerp, Monge, Jones & Edwards, Ashland, KY, Counsel for Appellant, AK Steel Corporation.

William C.O. Reaves, Ashland, KY, Counsel for Appellee, Beverly Adkins.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that rotator cuff surgery was reasonable and necessary treatment for an injury that the claimant sustained from an unexplained fall or from using hammers and opening/closing coal hopper doors. The Workers' Compensation Board affirmed the decision, and the Court of Appeals affirmed the Board. Appealing, the employer asserts that the ALJ lacked the authority to apply a non-statutory presumption of work-relatedness or, in the alternative, that it offered sufficient evidence to overcome the presumption and show that the harmful changes were pre-existing and non-work-related.

Assuming that the employer rebutted the presumption, reducing it to no more than a permissible inference, other sub-stantial evidence supported the finding of causation. Therefore, we affirm and find it unnecessary to consider the ALJ's authority to apply the presumption.

The claimant worked the night shift as a coal handler in a coke plant. She fell to the ground at about 1:00 AM on February 16, 2005, after attempting to close the door of a coal hopper that she had unloaded. She landed on her buttock and fell back-ward until her head hit the concrete floor. Although she did not land on her right arm or shoulder, she experienced immediate right shoulder pain. She went to the plant's medical department at about 2:00 AM, where she was treated. The claimant was placed on sick leave nine days later, underwent rotator cuff surgery in October 2005, and did not return to work. She did not know what caused the fall and sur-mised that she lost her footing but did not recall doing so.

The claimant testified that she is right-handed and that her job required her to swing a 9- to 13-pound sledgehammer to knock the latchets loose on coal cars. Af-ter she emptied the cars, she inserted an 8-pound closing bar into the latch, swung it up to the first notch, then increased the pressure on the bar to put it into the second notch and throw the latch over. She testified that she worked on 13 to 15 cars per day.

As early as December 1998, the claimant had experienced pain in her right ear, down her neck, and across the top of her shoulder. She stated, however, that her present pain was in her upper arm, at the shoulder joint. She testified that she saw Dr. Touma in October 2003 due to "being off balance," when recovering from compli-cations of bilateral pneumonia. She stated that she experienced motion sickness easi-ly and sometimes had difficulty going from dark to light places. She denied being

dizzy or losing consciousness on the day that she fell.

Dr. Baldera, the employer's occupational medicine physician, examined the claimant immediately after she fell. He testified that she complained of difficulty moving her right shoulder but that the initial examination revealed no bruising, swelling, or redness in the right hand, elbow, or shoulder. Dr. Baldera testified that multiple causes can produce a brief and sudden loss of consciousness, which is known medically as a syncopal event. For example, a vasovagal response to pain can cause an individual to faint and have no recollection of the event. He explained that a rotator cuff tear can produce such pain but that he would have expected the claimant to recall having pain if that had occurred. According to Dr. Baldera, she indicated that she had not experienced a previous syncopal event. She did not report that Dr. Touma had treated her for dizziness about a month before the accident.

Dr. Hinchman evaluated the claimant for the employer several days after the incident. He stated that it was difficult to determine what injuries it caused without knowing its mechanism. He agreed with Dr. Baldera that a rotator cuff tear could be painful enough to cause a vasovagal reaction and momentary loss of consciousness but that, if that occurred, the claimant should remember the reason for the episode. He thought it very unusual that she denied losing consciousness but could not recall how or why she fell.

Dr. Dial noted that MRI revealed a tear of the supraspinatus and infraspinatus tendons at their insertion as well as tendonopathic changes. He attributed the conditions directly to the work-related incident. Dr. Dial referred the claimant to Dr. Tao, who diagnosed a full-thickness right rotator cuff tear. Dr. Kibler performed surgery to repair the conditions in October 2005.

Dr. Wagner evaluated the claimant for the employer in January 2006, reviewed extensive medical records, and prepared a report. He did not assign a permanent impairment rating because the claimant was not at maximum medical improvement (MMI) from the surgery. He stated, however, that half of the ultimate impairment would be due to the tendonopathic changes, which were pre-existing. In an addendum, he indicated that the previous report was based, in part, on a history related by the claimant. He noted that she did not know how she landed, did not point to anything in the work environment that caused her to fall, and did not provide a mechanism of injury. He stated that he had based his initial opinion of causation on her description of the fall. Noting that she had described it to him in greater detail than she had in the first injury report, he explained that he considered the two histories to be inconsistent and could no longer state with reasonable medical probability that the need for surgery resulted from the fall.

Sheila Webb, nursing manager in the plant's medical department, examined the claimant on the day of the incident. Like Dr. Baldera, she noted no cuts, scrapes, or bruises. When completing the injury report, she noted the claimant's description of the incident as follows: "States was closing hopper car door and must have lost my footing and was on ground on back."

Gladys Gilbert, a medical department nurse, was deposed regarding notes dated February 16, 2005. She testified that she arrived at the clinic at about 7:00 AM. The claimant had not had breakfast, so she offered to fix her some juice and toast, which she refused. At about 8:25 AM, the claimant stated that she felt like her blood sugar was dropping, so Ms. Gilbert

checked it and found it to be a little low. She gave the claimant some juice and toast, which she ate. According to Ms. Gilbert, the claimant did not indicate that anything in her environment helped to cause the fall or that she hit anything as she fell. Nor did she indicate that the closing bar or hopper door played a role in the incident.

Mr. Jay Gatzmiller, the plant safety manager, testified that he investigated the accident and found nothing to have caused the fall.

The employer submitted medical records from Dr. Touma, which indicated that he had treated the claimant since October 2003 complaints of motion sickness, nausea, dizziness, and a continuous right-sided earache. The symptoms had been present for about two months and fluctuated in severity. She reported a history of sinus headaches and of being weak since a recent hospitalization. Dr. Touma prescribed balance therapy and ordered various diagnostic tests, including allergy testing. He eventually diagnosed a multi-sensory deficit and allergic rhinitis for which he prescribed Clarinex and a nasal spray. He noted on January 13, 2005, that she "still feels much better and is much less off balance than before." He prescribed an additional medication for the allergic condition and noted with regard to the dizziness, "The patient appears to be much less symptomatic than before, therefore no intervention is necessary."

After an exhaustive review of the evidence, the ALJ noted that the claimant had performed heavy labor at the plant since 1998, primarily with her right hand and arm. Finding there to be no reliable evidence of a purely personal reason for the fall, the ALJ relied on *Workman v. Wesley Manor Methodist Home*, 462 S.W.2d 898 (Ky.1971), and *Coomes v. Rob-*

*ertson Lumber Co.*, 427 S.W.2d 809 (Ky. 1968), for a presumption that it was work-related. The ALJ also determined that even if the employer's evidence reduced the presumption to a permissible inference, the claimant's testimony was the best evidence of what caused the accident. The ALJ noted that she described the heavy physical nature of her work. She stated that she was using her right arm and shoulder to perform work when she fell and injured her shoulder and stated that she had been doing so without difficulty for several hours when the accident occurred. Her treating physicians attributed the torn rotator cuff to her work, and there was no substantial evidence of a pre-existing condition. The ALJ concluded that the rotator cuff tear was work-related, whether it resulted from the fall or from using sledgehammers and opening/closing hopper doors. Thus, the surgery was compensable because it was reasonable and necessary treatment for the injury.

The employer asserts that the Court of Appeals erred by affirming the ALJ's reliance on *Workman v. Wesley Manor Methodist Home, supra,* and *Coomes v. Robertson Lumber Co., supra,* as the basis for applying a rebuttable presumption of causation. It reasons that workers' compensation is statutory and that Chapter 342 contains no presumption concerning unexplained falls. Moreover, the presumption found in KRS 342.680 applies only to workers who cannot testify because they are dead or physically or mentally unable to do so.

KRS 342.0011(1) defines an injury as being a work-related traumatic event "arising out of and in the course of employment" that is the proximate cause producing a harmful change in the human organism. One naturally infers that an unexplained accident or death in the workplace had something to do with the em-

ployment and would not have occurred had the individual been elsewhere, but proving that it arose out of the employment is difficult. Not long after the inception of the Workers' Compensation Act, the court explained in *Phil Hollenbach Co. v. Hollenbach*, 181 Ky. 262, 204 S.W. 152, 159 (1918) that "in the course of employment" refers to the time, place, and circumstances of an accident, while "arising out of" refers to the cause or source of the accident. Noting that the deceased worker was healthy until struck by a live electrical wire in the workplace, the court noted that it was presumed in such instances that the accident caused the death unless the presumption was overcome by conflicting evidence. *Blair Fork Coal Co. v. Blankenship*, 416 S.W.2d 716, 718 (Ky. 1967), concerned the unexplained workplace death of an apparently healthy worker. The court noted that KRS 342.004, which at that time required the liberal construction of Chapter 342, did "not require liberal construction of the evidence or dispense with the duty of presenting the required proof." The court explained, however, that when the cause of an accident and injury are shown with circumstantial evidence, the fact-finder may draw reasonable inferences from the evidence as a whole and choose the most persuasive.

In *Coomes v. Robertson Lumber Co.*, *supra*, a worker last seen unloading lumber in his employer's lumberyard was found dazed and staggering to his feet with a bloody forehead due to a fractured skull. No one saw the accident, and little circumstantial evidence was available. The court noted that a rebuttable presumption of compensability arises when a worker is found unexplainably injured while working on the employer's premises. It concluded that the injury arose from the employment, regardless of whether Coomes was struck by sliding lumber or suffered an unexplained fall. In *Workman*

*v. Wesley Manor Methodist Home, supra* at 900, the court determined that the presumption of work-relatedness is rebutted with evidence casting sufficient doubt to justify a reasonable person disregarding it, in which case the fact-finder is free to determine that the injury is or is not work-related. Shortly thereafter, in *Salyers v. G. & P. Coal Co.*, 467 S.W.2d 115 (Ky. 1971), the court affirmed a decision denying compensation to a worker who was unable to walk or talk after being removed from a coal chute into which he had climbed, supposedly to break up a blockage. The court noted specifically that he did not testify and failed to submit medical evidence concerning the nature of his injury or relating his disability to his work.

In 1972 the legislature enacted KRS 342.680, which provides, in pertinent part, as follows:

> In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify as confirmed by competent medical evidence and where there is unrebutted prima facie evidence that indicates that the injury was work related, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury was work related....

KRS 342.680 appears to be a legislative response to *Salyers v. G. & P. Coal Co.*, *supra*. It authorizes a rebuttable presumption of causation in instances where a worker is incapable of explaining how a workplace injury occurred. The court addressed KRS 342.680's procedural effect in *Williams v. White Castle Systems, Inc.*, 173 S.W.3d 231 (Ky.2005).

▮▮▮ *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 95 (Ky.2000), explains that rebuttable presumptions are governed by KRE 301. A rebuttable presumption shifts to the party against whom it is di-

rected the burden of going forward with evidence to rebut or meet it but does not shift the burden of proof (i.e., the risk of nonpersuasion) from the party upon whom the burden was originally cast. If the presumption is not rebutted, the party with the burden of proof prevails on that issue by virtue of the presumption. If the presumption is rebutted, it is reduced to a permissible inference. The ALJ must then weigh the conflicting evidence and decide which is most persuasive. The court applied these principles recently in *Jefferson County Public Schools v. Stephens,* 208 S.W.3d 862 (Ky.2006), a case involving an unexplained workplace fall.

The claimant had the burden to prove every element of her claim, including causation. The reason for her workplace fall was not apparent. The employer offered evidence that she had been treated previously for dizziness and balance problems. It asserted that the fall and torn rotator cuff were due to a personal (idiopathic) cause and, therefore, not work-related.

■■■ KRS 342.285 designates the ALJ as the finder of fact. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky. 1985), explains that the fact-finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986), explains that a finding that favors the party with the burden of proof may not be disturbed if it is supported by substantial evidence and, therefore, is reasonable.

■■■ Assuming that the employer's evidence rebutted the presumption of causation and reduced it to no more than a permissible inference, other substantial evidence indicated that the torn rotator cuff was work-related. Thus, the finding of causation was reasonable. Under the circumstances, it is unnecessary to address an ALJ's authority to apply a non-statutory presumption of causation.

About a month before the incident Dr. Touma noted that the claimant's dizziness and balance condition had improved greatly and required no further treatment. She testified subsequently that she was not dizzy on the day of the injury and did not recall fainting. She had been performing heavy physical work with her right arm for several hours when the accident occurred and was using her right arm and shoulder to close the door on a coal hopper when she fell and experienced immediate shoulder pain. Drs. Baldera and Hinchman testified that pain resulting from a rotator cuff tear could have caused her to faint but not recall doing so, though they thought that she would have recalled the pain. Dr. Dial attributed the rotator cuff tear to the work-related incident, and no medical evidence related the prior neck and shoulder complaints to the rotator cuff tear. The evidence provided ample support for a reasonable finding of causation.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.