**TOYOTA MOTOR MANUFACTURING, U.S.A., INC., Appellant,**

v.

**Brian EPPERSON, Appellee.**

**No. 96–SC–109–DG.**

Supreme Court of Kentucky.

Nov. 21, 1996.

Rehearing Denied June 19, 1997.

John A. West, Jeffrey A. Savarise, Stephanie H. Prewitt, Greenebaum Doll & McDonald, Lexington, Patrick A. Nepute, Senior Counsel, Toyota Motor Manufacturing, U.S.A., Inc., Georgetown, for appellant.

Richard Clay, William R. Erwin, Danville, for appellee.

STUMBO, Justice.

Toyota Motor Manufacturing, U.S.A., Inc. (hereinafter "Toyota"), sought and was granted discretionary review of the decision of the Court Appeals in this employment discrimination case. The issue presented is whether misrepresentations by the employee on his employment application will bar a suit for employment discrimination under the civil rights act. The Court of Appeals held that such misrepresentations will not bar suit under KRS 344.020(1) and we agree.

Brian Epperson (hereinafter "Epperson") suffered a wrist injury at work. After he had been on medical leave for six months, Toyota discharged him pursuant to company policy. Epperson filed suit alleging discrimination in employment based upon his disability. During the course of the litigation of this suit and Epperson's workers' compensation claim, Toyota discovered that Epperson had misrepresented certain facts on his employment application.

Specifically, in response to appropriate questions, Epperson failed to mention that he had been discharged by Tandy Corporation in 1990, and that he had attended high school in Danville and college at Purdue University.

Additionally, Epperson failed to disclose that he had previously attempted suicide, undergone diagnostic testing on his back, been hospitalized numerous times for various medical problems, and diagnosed with diabetes.

The employment application Epperson filled out contained the following language directly above the signature line:

All of the information I have provided is true, correct and complete to the best of my knowledge. I agree that any omission, misrepresentation or falsification or information on [this application/the physical exam] or any other documentation presented to Toyota will be grounds for rejecting this application or discharging me if I am employed by the Company.

According to an affidavit submitted by a Toyota's Assistant General Manager of Human Resources, Toyota has a policy of not hiring persons who have been terminated by previous employers for serious disciplinary-related matters. The trial court granted Toyota summary judgment over the objection of Epperson. The Court of Appeals reversed with a split decision, and this court granted discretionary review.

■ Because this matter was resolved by summary judgment, the record must be viewed in the light most favorable to the party opposing the motion and all doubts must be resolved in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary judgment is properly entered if the pleadings and all relevant discovery indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Palmer v. International Ass'n of Machinists and Aerospace Workers*, Ky., 882 S.W.2d 117, 120 (1994).

■ While the trial court did not state its reasons for granting summary judgment[1], Toyota's memorandum in support of summary judgment relied heavily on *Honaker v. Duro Bag Mfg. Co.*, Ky., 851 S.W.2d 481 (1993). *Honaker* is a workers' compensation case wherein the injured worker failed to disclose relevant portions of his medical his-

tory on his preemployment application and had a cousin undergo the preemployment physical in his place. The application stated that to be considered for employment, an applicant must "pass the company's pre-employment physical." *Id.* at 482.

Additionally, Honaker did not tell Duro that he had received a medical discharge from the U.S. army, a disability rating from the Veteran's Administration, and, following his discharge, had undergone treatment for his back, including a brace, cane, and muscle relaxants. He suffered a work-related back injury within a few months of beginning work with Duro. During litigation of the workers' compensation claim his true medical history was revealed, as was the fact that his cousin had taken the preemployment physical. Honaker's explanation for his lack of candor was that he believed he would be discriminated against because he could not pass the physical and did not want to risk not being hired. *Id.*

This Court held that Honaker's claim was barred since no employer/employee relationship was formed because Honaker failed to perform a condition precedent to the contract formation; to wit: he failed to take and pass the preemployment physical. *Id.* at 483. The Court noted that KRS 342.640 defines a covered employee as one who is "in the service of an employer under any contract of hire or apprenticeship, express or implied...." Without a contract for hire there is no employer/employee relationship for workers' compensation purposes. *M.J. Daly Co. v. Varney*, Ky., 695 S.W.2d 400, 401–02 (1985).

■ On appeal, Epperson argued that the *Honaker* reasoning should not transfer to the area of civil rights for a number of reasons. First, the Kentucky Civil Rights Act does not incorporate the "contract of hire" concept contained in KRS 342.640, and the policy considerations reflected in that concept are separate and different from those backing civil rights legislation. Next, Epperson noted that in *Honaker* the misrepresentation regarding his prior medical history and the

1.  A trial court is not required to make findings of fact and conclusions of law when sustaining a

motion for summary judgment. *Rhorer v. Rhorer's Ex'r*, Ky., 272 S.W.2d 801, 802 (1954).

work-related injury were closely related (both involved Honaker's back), while in the instant case the wrist injury at Toyota had no apparent connection to the medical conditions omitted from the application. Additionally, Epperson actually took and passed the required preemployment physical for Toyota.

Finally, Epperson relied upon the opinion of the United States Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In that case the Court refused to bar all relief under the Age Discrimination in Employment Act as a result of so-called "after-acquired evidence" of employee wrongdoing. *McKennon*, 513 U.S. at 358, 115 S.Ct. at 884, 130 L.Ed.2d at 861. Therein, the Court allowed a discrimination suit to proceed although the claimant had photocopied confidential company documents prior to her termination as "insurance" and "protection", a fact unknown to the employer at the time of the termination. *McKennon*, 513 U.S. at 354–55, 115 S.Ct. at 882–83, 130 L.Ed.2d at 859–60.

The Court of Appeals was impressed with the first and last arguments of Epperson. Noting that an action under the Civil Rights Act can be maintained where an employer refuses to hire a potential employee because of prohibited discriminatory considerations, the court stated that the policy considerations guiding the decision in *Honaker* and behind the Workers' Compensation Act were completely different. We agree. As stated in *Layne v. Newberg*, Ky., 841 S.W.2d 181, 183 (1992), "the stated purpose of the [Workers' Compensation] Act [is] that of affording financial protection to workers injured or killed in the course of employment." The public policy of the Civil Rights Act is set forth in KRS 344.020(1)(b), wherein it states that the Act is to be construed to "safeguard *all* individuals within the state from discrimination because of familial status, disability, race, color, religion, national origin, sex, and age forty (40) to seventy (70)...." KRS 344.020(1)(b) (emphasis added).

The concerns of the Workers' Compensation Act are far narrower than those of the Civil Rights Act, and its benefits are properly limited to those workers whose contracts of hire satisfy the formal requirements of contract law. The financial concern of the Workers' Compensation Act, while important, pales beside the Civil Rights Act's stated aim for all Kentuckians and others within the Act's reach, to "protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest which would menace its democratic institutions, to preserve the public safety, health, and general welfare, and to further the interest, rights and privileges of individuals within the state[.]" KRS 344.020(1)(b).

*Honaker*, then, is not a bar to this action. The question now shifts to the applicability of *McKennon v. Nashville Banner Publishing Co.*, *supra*. Toyota argues that *McKennon* should not apply because the misconduct involved occurred after the employee had become an employee as opposed to the preemployment misconduct at issue here. *McKennon*, 513 U.S. at 355–56, 115 S.Ct. at 883, 130 L.Ed.2d at 859. Toyota contends that *McKennon* simply invalidates the rule that had developed in some federal circuits that any employee misconduct precluded a discrimination claim where the employer can show it would have fired the employee on the basis of the evidence discovered after the termination.

We reject the argument of Toyota for the same reason that the United States Supreme Court decided the case before it in *McKennon*. Just as the *Nashville Banner* did not discover McKennon's misconduct until after she had been fired, Toyota only found Epperson's misrepresentations after litigation of this suit and his workers' compensation claim had begun. "The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *McKennon*, 513 U.S. at 360, 115 S.Ct. at 885, 130 L.Ed.2d at 862.

■ Because Toyota does not deny that Epperson was discharged from his position based on company policy requiring such a discharge after six months of medical leave and this case was decided on the summary judgment, we must interpret that evidence in the light most favorable to Epperson. We, therefore, assume that the firing was for a

discriminatory reason: disability. The after-acquired evidence of misrepresentation on the employment application does not act as legal bar to the bringing of this action. We do not here reach whether that evidence is admissible at trial. However, in the interest of judicial economy, we refer counsel and the trial court to the *McKennon* case for guidance as to the admission and use of the evidence in the determination of damages and appropriate instructions.

For the reasons set forth herein, the decision of the Court of Appeals is affirmed and this matter is remanded to the trial court for proceedings consistent with this opinion.

STEPHENS, C.J., and BAKER and KING, JJ., concur.

GRAVES, J., dissents by separate opinion, in which LAMBERT and WINTERSHEIMER, JJ., join.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

After completing an employment application which later was found to contain numerous and material omissions and misrepresentations, Epperson was hired to work for Toyota as a production-line worker at its plant in Georgetown starting on April 20, 1992. Less than two months later, on June 17, 1992, Epperson suffered a wrist injury on the job. Being unable to return to work within six months of beginning his medical leave of absence, Epperson's employment was terminated pursuant to company policy for workers in "initial evaluation periods." He responded by filing this action alleging discrimination based upon disability in violation of KRS 344.040.

Epperson deliberately falsified his medical questionnaire. Although he claimed never to have suffered from a mental disorder, he in fact had required the services of a mental health hospital after attempting suicide by drug overdose. That hospitalization was one of at least five required in 1988 and 1989 by Epperson, whose medical history acknowledged only two 1974 hospitalizations for an appendectomy and arm surgery. The 1988 and 1989 hospitalizations involved not only Epperson's drug overdose but also severe headaches and stomach problems as well as a back injury.

*McKennon v. Nashville Banner Publishing Company*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), is distinguishable from this case on the facts. *McKennon* involved a federal age discrimination action filed by an employee discharged after three decades of employment. In the course of defending that action, the employer discovered that Ms. McKennon near the end of her employment had copied confidential financial documents for "insurance" against a potential age-related discharge. Reversing the Sixth Circuit's decision for the employer, the Court rejected the defense as an absolute bar to an ADEA action because an "employer could not have been motivated by knowledge it did not have" 513 U.S. at page 360, (115 S.Ct. at page 885) but later determined that neither reinstatement nor front pay were available remedies because "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." 513 U.S. at p. 362, 115 S.Ct. at p. 886.

*McKennon* expressly allows differing determinations premised upon "the factual permutations and the equitable considerations" involved in addressing such "important public purposes." 513 U.S. at pages 360, 115 S.Ct. at pages 885–86. Unlike this case, the misconduct in *McKennon* did not involve the very establishment of an employment relationship.

At pages 13–14 of the Court of Appeals opinion, Chief Judge Lester reasoned in his dissent as follows:

The Court spoke of "important national policies" and "important public purposes which means that applying the mandates of *McKennon* to the case at bench we are equating fraudulent misrepresentations with important state policies and important public purposes. I hardly think that in enacting KRS 344.060 that the General Assembly would have envisioned such a lack of candor upon an individual's part as a basis for legal redress. The lofty phrase "societal interests" to my way of thinking does not include an interest on the part of "society" in nurturing a claim such as the one before us.

\*   \*   \*   \*   \*   \*

Since I agree that we are not bound by federal decisions in this type of litigation, then, as Justice Kennedy suggests, I would address this case from the standpoints of "the factual permutations" and the "equitable considerations" and affirm the circuit court.

The Kentucky General Assembly has shown strong disfavor for individuals who falsify employment applications and other pre-employment business records. For example, an individual is barred from receiving unemployment benefits when he is discharged for "falsification of an employment application to obtain employment through subterfuge." KRS 341.370(6). Likewise, State Personnel Rules for Executive Branch Employees provide that an applicant may be disqualified from employment where it is determined that "[h]e has made a false statement of material fact in his application." KRS 18A.032(1)(c). Also, the Kentucky Penal Code makes it a Class A misdemeanor for a person to make a "false entry ... in the business records of an enterprise." KRS 517.050. These statutes reflect a strong public policy that individuals—like Mr. Epperson—who engage in fraudulent conduct to secure employment not be rewarded for their misconduct. The Court's opinion is, therefore, inconsistent with the above-stated public policy of this Commonwealth.

As noted by Chief Justice Lester in his dissent, "this cause of action has its foundation in the gross fraudulent misrepresentations made by Appellant when he applied for employment." See Opinion at p. 12. I do not believe that in enacting the Civil Rights Act, the Kentucky General Assembly intended to protect and insulate prevaricators from the natural consequences of their dishonesty. The majority opinion, however, rewards Mr. Epperson for his gross fraudulent misrepresentations.

LAMBERT and WINTERSHEIMER, JJ., join in this dissenting opinion.