RENDERED: SEPTEMBER 3, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0470-MR

CYNTHIA WILLIAMS          APPELLANT

v.    APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 16-CI-002963

BROWN-FORMAN CORPORATION      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE: Cynthia Williams appeals the Jefferson Circuit Court's March

5, 2020 opinion and order dismissing her age-discrimination and retaliation claims

against Brown-Forman Corporation. Finding no error, we affirm.

## BACKGROUND

This case is before the Court for a second time. *See Williams v. Brown-Forman Corporation*, No. 2017-CA-002043-MR, 2019 WL 1313411 (Ky. App. Mar. 22, 2019) ("*Williams I*"). Our previous opinion includes a full background of this case; here, we present a factual and procedural synopsis as necessary.

Williams began working for Brown-Forman in 1997 and received many awards from the company. In 2013, she became Group Manager of Shopper Insights, and in February 2015, Cheryl Small became Williams's supervisor.

The parties agree that the relationship between Williams and Small was strained. They also agree that other members of the Shopper Insights team complained about Small's management style. Upper management deemed it appropriate to appoint someone outside its North American Region Group to investigate Small's behavior. This assignment fell to Diane Nguyen. After several months of investigation and employee interviews, Nguyen completed her investigation. She concluded no illegal conduct occurred. However, Nguyen was critical of Small's management and leadership style, noting that it was often "competitive," "disruptive," and "disrespectful."

Before Nguyen's investigation was complete, Small placed Williams on a Performance Improvement Plan ("PIP"). The PIP identified areas for

improvement. As more fully described in *Williams I*, Williams failed to meet periodic goals. Williams claims Small constantly "moved the goal post" and undermined her ability to succeed. Nevertheless, citing failures to meet objectives, Small and Geoff Cronan, Brown-Forman's Director of Sales and Marketing Integration and Execution, made the decision to fire Williams. The termination was effective January 25, 2016. Williams was 50 years and 3 months old.

A year later, Williams filed an age-discrimination and retaliation lawsuit against Brown-Forman under the Kentucky Civil Rights Act, KRS[1] 344.010, *et seq.* ("KCRA").

After more than a year of discovery, Williams presented no evidence to contradict the sworn statements of Small and Cronan that they were not aware of Williams's age or of her claims of age discrimination when they decided to terminate her. Fourteen months after Williams filed her complaint, the trial court dismissed Williams's case because she failed to present evidence:

> either that she was subjected to substantially disparate treatment from similarly situated younger employees, or that she had been replaced by a substantially younger employee. With respect to the retaliation claim, the trial court found that Williams failed to present evidence showing that either Small or Cronan were aware of Williams's complaints of age discrimination at the time they fired her. Based on these conclusions, the trial court dismissed the complaint.

---

[1] Kentucky Revised Statutes.

*Williams I*, 2019 WL 1313411, at \*3.

However, no one was hired to replace Williams until after Brown-Forman's motions for judgment were filed. *Id.* at \*7. In July 2017, eighteen months after Williams was terminated, Brown-Forman hired Lori Oles, age 45 years and 8 days.

In *Williams I*, this Court found no impropriety in Brown-Forman's delay in hiring Williams's replacement, but we said the timing affected Williams's theory of her case and justified allowing her more time for discovery. Specifically, this Court decided that "Williams alleged sufficient facts to warrant additional discovery on whether the age difference between her and [her replacement] was substantial. . . . For similar reasons, we conclude[d] that the trial court granted summary judgment prematurely on Williams's retaliation claim." *Id.* We remanded the case for further discovery.[2] *Id.* at \*8.

---

[2] In her first appeal, Williams argued that, before her case was dismissed, she had adduced "evidence . . . sufficient to warrant additional discovery on her disparate treatment claim." *Id.* at \*5. As did the trial court, we rejected that argument, "concluding that additional discovery would not be relevant to establish whether [three younger employees, Mattingly, Eichberger, and Tyler] were similarly situated to Williams." *Id.* We held "that Williams failed to establish the disparate treatment element of her *prima facie* case." *Id.* Our mandate then said, "we remand this matter for additional proceedings on the merits of Williams's *remaining claims*." *Id.* at \*8 (emphasis added). Those remaining claims were: (1) that she was replaced by a substantially younger employee and (2) that her termination was motivated by retaliation. Notwithstanding the specific mandate, the trial court allowed Williams to again present her third claim, the disparate treatment claim, but the trial court again reached the conclusion that Williams failed to establish a *prima facie* case for disparate treatment. Williams does not appeal the dismissal of her age-discrimination claim to the extent it alleges disparate treatment.

Back in the trial court, Brown-Forman's document production indicated to Williams that Small continued a pattern of discriminatory, harassing conduct toward older employees, including Oles.  Despite the additional discovery, and upon Brown-Forman's renewed motion, the trial court dismissed Williams's age-discrimination claim because she presented no direct or circumstantial proof she was replaced by someone substantially younger.[3]  Consequently, she could not establish a *prima facie* case of age discrimination.

The trial court also granted summary judgment in favor of Brown-Forman on Williams's retaliation claim because Small's and Cronan's affidavits established that neither supervisor was aware of Williams's age-discrimination complaints and Williams "provided the [trial court] with neither direct nor circumstantial evidence" to create a genuine issue regarding that material fact. (Opinion and order, Record ("R.") at 829.)

Williams then brought this appeal to challenge the trial court's second opinion and order that dispensed with all her claims.  We discuss further facts and procedure as necessary to the analysis below.

---

[3] *See supra*, footnote 2.

## ANALYSIS

A defendant may test a plaintiff's claim in different ways, depending on the nature of the claim itself. In this case, Brown-Forman successfully tested Williams's retaliation claim pursuant to CR[4] 56.02, and successfully tested her age-discrimination claim based on *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as adopted for Kentucky for claims under the KCRA in *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. 1984).[5] We review the dismissal of those claims in that order.

*Dismissal of the retaliation claim was proper*.

Brown-Forman presented the trial court with affidavits showing "the nonexistence of an issue of material fact." *Steelvest, Inc. v. Scansteel Serv. Ctr.,*

---

[4] Kentucky Rules of Civil Procedure.

[5] The federal Age Discrimination in Employment Act ("ADEA") and the KCRA prohibit employment discrimination based upon an employee's age. Under the ADEA:

> It shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age[.]

29 United States Code Annotated ("U.S.C.A.") § 623(a)(1). The KCRA says:

> It is an unlawful practice for an employer . . . to discharge any individual . . . because of the individual's . . . age forty (40) and over[.]

KRS 344.040(1)(a). The language of both statutes is sufficiently similar for the following principle to apply: "This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age . . . ." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).

*Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). Those affidavits stated that neither Small nor Cronan knew when they fired Williams that she had exercised, or was exercising, a civil right by claiming age discrimination. Having failed to present proof contradicting Small's and Cronan's affidavits, Williams's retaliation claim failed as a matter of law. *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004) (second element of retaliation claim is knowledge of employee's exercise of a civil right).

Small's and Cronan's sworn affidavits that they were unaware of any age-discrimination claim shifted to Williams the burden of producing "at least some affirmative evidence showing that there is a genuine issue of material fact for trial" of the retaliation claim. *Steelvest*, 807 S.W.2d at 482. The trial court found that, despite having substantial time for discovery, Williams failed to carry that burden of production and, so, granted summary judgment for Brown-Forman.

Although "[a] trial court is not required to make findings of fact and conclusions of law when sustaining a motion for summary judgment[,]" *Toyota Motor Mfg., U.S.A., Inc. v. Epperson*, 945 S.W.2d 413, 414 n.1 (Ky. 1996), the judgment in this case includes findings and conclusions. The trial court began by stating Brown-Forman's contention that Williams "failed to produce evidence controverting Small[']s and Cronan's affidavits denying any knowledge of her

protected activity." (R. at 827.) The trial court assessed whether Brown-Forman's contention was correct by describing Williams's efforts to controvert the affidavits.

Williams claimed "her documented meetings" with Brown-Forman's Senior Vice President and Executive Vice President of Human Resources constituted sufficient controverting proof. (R. at 827.) The trial court concluded that, although these discussions with corporate executives "likely . . . show she complained of conduct she reasonably believed to be wrongful[,] . . . she provided the [c]ourt with neither direct nor circumstantial evidence that the decision makers behind her termination [Small and Cronan] knew" Williams had complained at all, much less specifically about age discrimination. (R. at 829.)

The trial court also considered Williams's speculation that while these executives were "coaching Small" and discussing a "Talking Points" document to address Small's subordinates' criticisms of her performance, Small could have "connect[ed] the criticism detailed in that document to Williams." (*Id*. at 827-28.) The problem with that argument, as noted by the trial court, is that the "Talking Points" document made no reference to age discrimination and only "concerned Small's competitive rather than cooperative style, her lack of clear direction, and her penchant for making discrediting comments." (*Id*. at 829.) As the trial court also noted, "Even if Small or Cronan could connect these complaints to Williams," nothing about the complaints, or the "Talking Points" document that was created to

-8-

address those complaints, supports the inference that Small or Cronan knew "Williams also complained of age discrimination." (*Id.*) Accordingly, the trial court granted summary judgment in favor of Brown-Forman on Williams's retaliation claim.

On appeal, Williams directs this Court to nothing that successfully assails the trial court's ruling. Her first argument is that, in *Williams I*, this Court "recognized that there was circumstantial evidence indicating that Ms. Small may not have been telling the truth." (Appellant's brief, p. 19.) It is true that this Court generously acknowledged circumstances justifying further discovery to test the credibility of Small's and Cronan's sworn affidavits. *Williams I*, 2019 WL 1313411, at *7. We expressly noted, "Williams had not yet deposed Nguyen, Small, or Cronan at the time the trial court granted summary judgment for Brown-Forman. Their testimony would have a direct bearing on the credibility of Small's and Cronan's affidavits." *Id.* "And considering that discovery was not yet complete" as to the remanded age-discrimination claim, it made sense to allow her to see if she could discover "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* (citing *Steelvest*, 807 S.W.2d at 482). Notably, if such evidence sufficed to create a genuine issue of material fact whether Small and Cronan knew Williams was complaining of age discrimination, this Court would have reversed the summary judgment in *Williams I*, and not

merely remanded for further discovery. So, what did Williams discover on remand?

On remand, Williams did little to challenge the affidavits of Small and Cronan. As the trial court noted, "[I]n the time since the Court of Appeals remanded this case, Williams has deposed Small, but opted not to depose Cronan, which has the effect of admitting his affidavit is true." (R. at 826.) And the deposition of Small appears not to have undermined the credibility of either affidavit in the least. Although this Court anticipated that Williams would depose Nguyen, it seems she elected not to do so as there is no reference to such a deposition in the briefs. In any event, the trial court found Small's and Cronan's affidavits "are uncontroverted, and the [c]ourt has not been directed to evidence that may be used to impeach these claims [of lack of knowledge of Williams's age-discrimination allegations] through a deposition of Small or Cronan."

However, in her brief in this second appeal, Williams claims to have discovered "the pivotal piece of evidence" to create the necessary genuine issue. (Appellant's brief, p. 20.) She tells us, "[T]his Court of Appeals and Ms. Williams believed Ms. Small['s] and Ms. Nguyen's testimony would be the most enlightening on the topic. As it turned out, it was a totally different witness who supplied the smoking gun." (*Id.*, p. 20 n.4.) The "smoking gun" testimony comes

from a person Williams describes as a friend and Brown-Forman Human Resources employee, Amanda Ives. Here is how Williams describes this evidence:

> Ms. Ives stated that she and Ms. Small had been "working on the PIP this week and plan to have the final approval from Mary by Friday or Monday." (US – Resp. to 2nd MSJ, Exh. 2) Ms. Ives confirmed that Ms. Small authored Ms. Williams' draft PIP. The draft PIP directed Ms. Williams to stop taking her "concerns" regarding Ms. Small's leadership to people other than Ms. Small. It also ordered that there should be "[n]o further complaints from [Ms. Small's] team members." *Id.* Ms. Williams was one of Ms. Small's team members.

(*Id.*, p. 21.) But nothing about this information contradicts Small's statement under oath that she did not know Williams was complaining that Small was discriminating against her because of her age. This evidence shows nothing more than that Small instructed her team members, including Williams, to direct their concerns to Small, their direct supervisor, and, in general, to quit complaining. Nothing indicates such complaints were about age discrimination and, therefore, nothing could indicate Small was aware they were, if they were.

> As this reviewing Court's role is often described,
>
> we determine whether the record supports the trial court's conclusion that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to the trial court's assessment of the record or its legal conclusions.

*Foreman v. Auto Club Property-Casualty Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (internal quotation marks and footnotes omitted). In this case, we find no reason to disturb the trial court's summary judgment and dismissal of Williams's retaliation claim because the record establishes that Williams failed to create a genuine issue of material fact and that Brown-Forman was entitled to judgment as a matter of law.

We move on to address Williams's claim of age discrimination. *McDonnell-Douglas framework must be applied*.

To begin, Williams urges this Court to reject "the *McDonnell-Douglas* paradigm" because it is "treated as a set of evidentiary shackles by attorneys and courts alike." (Appellant's brief, p. 17.) She says the question should be: "Did the defendant discriminate against the plaintiff?" Williams stated her belief that if she loses despite having a strong claim of discrimination, the *McConnell-Douglas* framework will have "become incurably goofy." (*Id.*, p. 19.)

Notwithstanding Williams's dismay, we must apply the *McDonnell-Douglas* analysis. Kentucky courts have not only adopted, but "embraced and affirmed the United States Supreme Court's assertions that *McDonnell Douglas* established a burden-shifting framework" as the appropriate procedure for litigating claims of employment discrimination. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 722 (Ky. 2020).

-12-

*McDonnell Douglas* provides "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020) (analyzing *McDonnell Douglas*). It establishes a three-step protocol of shifting the burden of production between the employee and the employer, but always leaving the burden of persuasion with the employee.

The first step requires the employee to establish a *prima facie* case consisting of four elements, which we will discuss below. Establishing the *prima facie* case shifts the burden of production to the employer. The second step provides that the employer may produce evidence of a non-discriminatory basis for the adverse employment action. That shifts the burden of production back to the employee to produce evidence that the employer's non-discriminatory basis for adverse employment action was merely a pretext for discrimination and that but for the discrimination no adverse employment action would have occurred. *McDonnell Douglas*, 411 U.S. at 802-05, 93 S. Ct. at 1824-26; *Comcast*, 140 S. Ct. at 1019 (analyzing *McDonnell Douglas*).

Although extensive discovery led both parties to produce substantial evidence, the trial court concluded Williams could not satisfy the requirements of the first step in the *McDonnell-Douglas* protocol – establishing a *prima facie* case. Our review of Williams's age-discrimination claim is limited to that narrow issue.

-13-

<u>*Williams failed to establish prima facie case of age discrimination*</u>.

Any discharged employee claiming age discrimination would prefer direct evidence of discriminatory motivation. This is rare. Fortunately, *McDonnell Douglas* provides the framework for finding discriminatory animus based on circumstantial evidence. It first requires proof of a *prima facie* case; *i.e.*, proof supporting allegations that the employee: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position from which she was discharged; and (4) was replaced by a significantly younger person.[6] *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005).

If the trial court concludes there is sufficient proof of each of these elements, the employee will be entitled to "an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981) (internal quotation marks omitted). Establishing the *prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* This is a "legally mandatory, rebuttable presumption[.]"

---

[6] This element can also be satisfied by proof of disparate treatment. However, as noted in footnote 2, *supra*, Williams does not appeal the dismissal of her age-discrimination claim based on disparate treatment.

-14-

*O'Connor,* 517 U.S. at 312, 116 S. Ct. at 1310 (quoting *Burdine*, 450 U.S. at 254 n.7, 101 S. Ct. at 1094 n.7).

Furthermore, "there must be at least a logical connection between *each element* of the prima facie case and the illegal discrimination for which it establishes" this presumption. *Id.* at 311-12, 116 S. Ct. at 1310 (emphasis added). Brown-Forman successfully challenged Williams's age-discrimination case by convincing the trial court she failed to produce sufficient evidence of the fourth element of the *prima facie* claim – that she was replaced by a substantially younger employee.

Williams's objection to the *McDonnell Douglas* analysis is that its first step – establishing the *prima facie* case – "invades the province of the jury." (Appellant's brief, p. 25.) We disagree.

Within the *McDonnell Douglas* framework, the trial court is not deciding whether the replacement is younger than the discharged employee. That is a question of fact which this Court found never to be a genuine issue in any case.

On the other hand, the employee's allegation that the person who replaced her was *substantially* younger presents a question of law to be decided by the trial court. *See Disselkamp*, 600 S.W.3d at 713 (jury instruction "misstated the law because it included the substantially-younger requirement as an issue for the jury rather than the judge"). This legal determination is necessary to the

advancement of an age-discrimination claim. That was made clear by the Supreme Court of the United States which said:

> [T]he prima facie case requires "*evidence adequate to create an inference that an employment decision was based on a*[*n*] [*illegal*] *discriminatory criterion . . . .*" *Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 1866, 52 L. Ed. 2d 396 (1977) (emphasis added). In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger.

*O'Conner*, 517 U.S. at 312-13, 116 S. Ct. at 1310.

Because we review legal rulings *de novo*, this Court shall consider Williams's argument that her replacement was substantially younger, and Brown-Forman's argument that she was not, without deference to the trial court's ruling.

The material facts are not in dispute. Williams was born six years and nine months before her replacement, Oles. However, Oles was not hired on the same day Williams was fired. When Williams was fired, she was 50 years old. When Oles was hired, she was 45 years old. Another material fact noted by Brown-Forman was that, to quote Williams, "Ms. Oles was immediately subjected to Ms. Small's age-discriminatory treatment." (Plaintiff's Opposition in Response to Defendant's Renewed Motion for Summary Judgment, (filed under seal and not paginated by the circuit clerk), p. 15.) This fact cuts against an inference that Small (or Brown-Forman) perceived Oles as substantially younger than Williams.

Based on these facts, the trial court determined that Williams failed to establish the fourth element of her *prima facie* case, stating as follows:

> [I]t is undisputed that Oles currently holds the position from which Williams was terminated. Oles was, depending on which parties' accounting method is chosen, either five years,[7] or six years and nine months younger[8] at hire than Williams was at the time of her departure. (Plaintiff's memorandum, p. 6). Much has already been made of the jurisdictional split regarding what constitutes a legally-significant disparity in age. (*See* <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 322 (6th Cir. 2003)). But as the Court of Appeals stated in its Opinion [in *Williams I*], there is no bright-line rule in Kentucky concerning this matter, and a "zone of discretion" exists between six and ten years' difference in employees' ages. (*See* <u>Blizzard v. Marion Tech. Coll.</u>, 698 F.3d 275 (6th Cir. 2012). . . . Williams has not produced evidence that she was replaced by a substantially younger person despite having a sufficient opportunity to complete discovery on the issue.

(Opinion and Order, R. at 826-27.)

The trial court's summary of the law regarding "what constitutes a legally-significant disparity in age" is concise and accurate, at least for the Sixth Circuit, and it also correctly notes that Kentucky does not have a bright-line rule for making such determinations. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) ("numerous cases in the federal courts discussing how

---

[7] Brown-Forman's calculation compared Williams' age when terminated and Oles' age when hired eighteen (18) months later. The difference was five (5) years. It is undisputed that Small did not know either employee's age at any relevant time.

[8] Williams calculates the age difference as the years and months between Williams's and Oles's respective birthdates.

many years younger a replacement has to be in order to satisfy the significantly-younger requirement").  However, we need not consider, too mechanically, these federal guidelines or standards.[9]  Kentucky jurisprudence provides the necessary standard for determining whether the facts of this record compel the legal presumption of age discrimination and, thus, whether Williams established her *prima facie* case.

To claim a presumption, including the legally mandated, rebuttable presumption of *McDonnell Douglas*, Williams was required to present facts having "a legitimate tendency to lead the mind to the conclusion that the fact to be proven exists." *Jackson v. Schine Lexington Corp.*, 305 Ky. 823, 828, 205 S.W.2d 1013, 1016 (1947) (citation omitted) (defining "presumption").  To meet that requirement, Williams presented proof of the following facts:  the difference

---

[9] The Sixth Circuit's approach is stated in *Blizzard v. Marion Technical College* as follows:

> This court established a bright-line rule in *Grosjean* [*v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003)] when it held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340. However, while an age difference of ten or more years is generally considered significant, *id.* at 336, replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis. *Cf. id.* at 340 (explaining that bright-line rule "does not encroach on our precedent holding that eight years can be a significant age difference").  Thus, *Grosjean* essentially created a zone of discretion in age-discrimination cases involving replacement by a person who is between six and ten years younger than the plaintiff.

698 F.3d 275, 284 (6th Cir. 2012).

between her age and that of her replacement; her termination date and the date her replacement was hired; and, that Small treated her replacement just as she had treated Williams – that is to say, engaging in what Williams describes as age-discriminatory conduct.

The trial court concluded this was insufficient evidence to support a legal presumption that her termination was motivated by age-discrimination. In the opinion of this Court, too, such facts do not have a "legitimate tendency to lead the mind to the conclusion" that age was a motivating factor in Williams's termination. To support the presumption of unlawful discrimination, such facts must "do more than suggest the conclusion. [They] must be an impelling force which makes it reasonable to assume that the disputed fact is true." *Id.*; *see Rentschler v. Lewis*, 33 S.W.3d 518, 520 (Ky. 2000) ("a rebuttable presumption is qualified to the extent that the prescribed facts for creating the *prima facie* presumption shall have a natural and rational evidentiary relation to, and a logical tendency to prove, the principal fact." (internal quotation marks and citations omitted)); *Workman v. Wesley Manor Methodist Home*, 462 S.W.2d 898, 900 (Ky. 1971) (explaining, in a different employment law context, "the status of a rebuttable presumption, or prima facie case, which means from a procedural standpoint that in the absence of evidence sufficient to cast substantial doubt in the mind of a reasonable man that the presumption is correct").

We conclude that the facts in this record do not make it reasonable to assume the truth of the disputed fact – whether Brown-Forman discriminated against Williams because of her age. Williams was terminated when she was 50 years old. Her replacement was 45 years old when hired. That difference can hardly be called substantial. In the Sixth Circuit, as a matter of law, it is not. But there is more.

Williams claims she was treated poorly because she was old, and she also claims her replacement was treated poorly because her replacement was old. Presuming that to be a fact because it was not refuted, it does not undergird but undermines the inference that Brown-Forman replaced Williams with a substantially younger person. It even undermines any notion that Brown-Forman, or even Williams herself, *believed* Oles was substantially younger.

Having thoroughly examined the record and carefully considered the briefs in our *de novo* review, we conclude as a matter of law that Williams failed to establish a *prima facie* case of age discrimination.

## CONCLUSION

For the forgoing reasons, we affirm the Jefferson Circuit Court's March 5, 2020 opinion and order dismissing Williams's complaint and her claims against Brown-Forman.

-20-

ALL CONCUR.

BRIEFS FOR APPELLANT:

John S. Friend
Robert W. Bishop
Louisville, Kentucky

BRIEF FOR APPELLEE:

Rebecca A. Weis
Charles J. Cronan IV
Marjorie A. Farris
Bethany A. Breetz
Louisville, Kentucky