RENDERED: JULY 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0676-MR


RHONDA FRITCH                                                APPELLANT


v.
                     APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JOSEPH W. CASTLEN, III, JUDGE
ACTION NO. 22-CI-01035


THE ESTATE OF BESSIE R.
CRAVENS, SHARON WEBER,
EXECUTRIX                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Rhonda Fritch appeals from the Daviess Circuit Court's grant of summary judgment to the Estate of Bessie R. Cravens, Sharon Weber, Executrix ("the Estate"). We affirm.

In 2014, Bessie Cravens executed a will which bequeathed a ruby and diamond ring and $10.00 to her daughter, Rhonda Fitch, and the remainder of her

estate to her niece, Sharon Weber. Cravens' will does not provide express funeral arrangements but nonetheless states that "should anyone taking under my will change the arrangements for my funeral, they shall forfeit any right to inherit from me."

The record contains only minimal evidence of funeral arrangements made by Cravens. In 2004, Cravens signed a document on the letterhead of a funeral home, which provides in its entirety: "It is my wishes that I am <u>not</u> to be cremated and would like a traditional funeral service with burial like I have preplanned." *Id.* at 36. In 2017, Cravens entered into a funeral purchase agreement with the same funeral home upon whose letterhead she signed the 2004 document, but that agreement only provides in relevant part that Cravens had chosen a casket, paid for embalming services, and wanted a public visitation.

Cravens died in 2022. It is uncontested that she was not cremated and received a "traditional funeral service." However, it is also uncontested that Cravens' remains were not wearing her wedding band at her funeral.

Cravens' will was apparently submitted to probate in the Daviess Circuit Court. However, the record on appeal does not contain anything from the probate proceedings. Instead, the record before us begins with a complaint filed by Fritch against the Estate asserting Weber had forfeited her right to receive under Cravens' will because Cravens' body was not wearing the wedding band at the

funeral. Since the ultimate goal of Fritch's complaint was to obtain a ruling disallowing Weber from receiving property from the Estate, Fritch had to make two baseline showings: 1) Cravens' funeral arrangements required her to be wearing her wedding band at her funeral, and 2) Weber changed those arrangements.

After the parties conducted discovery, which included Fritch's being deposed, the Estate filed a motion for summary judgment. After holding a hearing, the trial court granted the Estate's motion. Fritch then filed this appeal.

We typically would begin by noting the familiar summary judgment standards. But both parties' briefs contain numerous deficiencies, so we must first "address, yet again, an attorney's failure to comply with rules of appellate procedure." *French v. French*, 581 S.W.3d 45, 47 (Ky. App. 2019).

RAP[1] 32(A)(4) provides in relevant part that the argument section of an appellant's opening brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Fritch's opening brief does not contain any preservation statements, and Fritch did not submit a reply brief to attempt to remedy that mistake. "If a party fails to inform the appellate court of

---

[1] Kentucky Rules of Appellate Procedure.

where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

Second, RAP 32(A)(3) and (4) require the statement of the case and argument sections of an appellant's opening brief to contain "ample references to the specific location in the record" where the brief's assertions may be located. The same requirements are imposed upon appellees in RAP 32(B)(3)-(4). Shockingly, neither Fritch nor the Estate provide a single pinpoint citation to the trial court record.

Fritch and the Estate cite to the respective appendices to their briefs but citing to an appendix is "not a substitute for the rule's requirement to cite only to the certified record on appeal." *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 151 (Ky. App. 2024). A failure to provide pinpoint citations to the record justifies the imposition of severe sanctions. *Commonwealth v. Roth*, 567 S.W.3d 591, 595-96 (Ky. 2019) (striking a brief and dismissing an appeal for failing to provide ample citations to the record under the former Kentucky Rule of Civil Procedure ("CR") 76.12, whose relevant provisions were essentially the same as RAP 32).

Third, an appendix to a party's brief must contain an index, which "shall set forth where each document may be found in the record." RAP

32(E)(1)(d).  Neither party's index here sets forth where the matters contained therein may be located in the trial court record.

Fourth, both parties have included a transcript of Weber's deposition in their appendices, but that deposition is not contained in the certified trial court record.  The circuit court clerk's certification of the record notes that it contains only one deposition – Fritch's.  Thus, both parties violated RAP 32(E)(1)(c), which provides that "[e]xcept for matters of which the appellate court may take judicial notice, materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs."  We shall strike Weber's deposition from each brief's appendix via separate order issued this same date, *J.P.T.*, 689 S.W.3d at 152, and shall not consider Weber's deposition in our merits analysis.

The question thus becomes whether we should ignore the briefing deficiencies or impose sanctions.  When making that determination we must consider many factors, such as the number and type of deficiencies.  *See, e.g.*, *Kentucky Farm Bureau Mutual Insurance Company v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015) (noting that "the appropriate sanction for the violation of a rule is *not* automatic dismissal; rather, the penalty must be commensurate with the harm caused and the severity of the defect, as determined on a case-by-case basis").

Here, there are several major deficiencies in the parties' briefs which have hindered our ability to resolve this appeal expeditiously.  "When counsel fail

to narrow focus to specific parts of a record . . . they unnecessarily tax already limited judicial resources." *J.P.T.*, 689 S.W.3d at 152. In short, the type and number of deficiencies here justify imposing sanctions.

Nonetheless, we sometimes have leniently refrained from imposing sanctions when an attorney has no history of submitting deficient briefs. *See, e.g.*, *Bewley v. Heady*, 610 S.W.3d 352, 355 (Ky. App. 2020). Here, a rudimentary Westlaw search did not show the Estate's counsel had previously submitted a deficient brief. But a similar search showed Fritch's counsel has done so at least twice in the last three years.[2] In addition, Fritch's brief contains a deficiency which the Estate's brief does not (lack of preservation statements).

In sum, we shall not sanction the Estate's counsel. However, we warn counsel to not expect such leniency in the future and urge counsel to scrutinize our basic appellate practice handbook. *See* https://www.kycourts.gov/Courts/Court-of-Appeals/Documents/P56BasicAppellatePracticeHandbook.pdf (last visited Jun. 20, 2025). We shall impose sanctions upon Fritch's counsel.

---

[2] *See Woodburn v. Commonwealth*, No. 2021-CA-1201-MR, 2022 WL 15526550, at *2 (Ky. App. Oct. 28, 2022) (unpublished) (submission of a brief which "contain[ed] minimal citations to the record, no specific digital counter number as it relates to the video record, and no statement of preservation at the beginning of its argument section for any arguments raised on appeal with citations to the record demonstrating how they were preserved for review."); *T.M. v. Cabinet for Health and Family Services*, No. 2022-CA-1170-ME, 2023 WL 3397533, at *4 (Ky. App. May 12, 2023) (unpublished) (submission of a brief with "not well-articulated" arguments unaccompanied by adequate citations to supportive authority).

Due to Fritch's brief's failure to cite amply to the record, failure to state where the materials in the appendix may be found in the record, and inclusion of improper materials in the appendix – and considering this is counsel's third submission of a substantially deficient brief within about three years – we shall impose a fine on counsel by separate order issued this same date. *See* RAP 10(B)(4) (permitting "[i]mposition of fines on counsel for failing to comply with these rules of not more than $1,000").

Due to the lack of preservation statements in Fritch's brief, we shall review only for a palpable error. *Ford*, 628 S.W.3d at 155. Under CR 61.02, "[a] palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." An error is palpable only if it is so "shocking or jurisprudentially intolerable[,]" *Summe v. Gronotte*, 357 S.W.3d 211, 216 (Ky. App. 2011) (internal quotation marks and citations omitted) that it "jumps off the page . . . and cries out for relief." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012) (internal quotation marks and citation omitted).

Turning to the merits, Fritch asserts the trial court made both procedural and substantive errors. Procedurally, Fritch asserts the trial court erred by not making findings of fact. Though the trial court's order is extremely terse,

-7-

Fritch's argument is contrary to our Supreme Court's holding that "[a] trial court is not required to make findings of fact and conclusions of law when sustaining a motion for summary judgment." *Toyota Motor Mfg., U.S.A., Inc. v. Epperson*, 945 S.W.2d 413, 414 (Ky. 1996).

Substantively, Fritch has not shown the trial court committed a palpable error. Fritch has not plainly shown either that Cravens made funeral arrangements requiring her remains to be wearing her wedding band during that ceremony or that Weber changed such an arrangement.

Cravens' will does not discuss any funeral arrangements, and neither Cravens' 2004 request for a traditional burial nor her 2017 funeral purchase agreement provide that a wedding band must be on her remains at the funeral. Instead, Fritch relies upon a two-page document she prepared containing her notes derived from conversations with Cravens, which Cravens later signed. Even laying aside, for the sake of argument, any evidentiary concerns about that document, it does not entitle Fritch to relief because Fritch admits she did not provide the document to Weber.

At Fritch's deposition, the document was referred to as Exhibits 2 and 3. In the following colloquy with the Estate's counsel, Fritch admits she did not provide the document to Weber:

-8-

Q. So did you ever communicate to Ms. Weber at any time prior to your mother's death that this band was to be on your mom's finger?

A. No. Sharon and I didn't really talk about things like that. But she was made aware of it when we sat at the table with Bruce [Chisholm, a funeral director].

***

Q. Did you ever provide either one of the Exhibit 2 or 3 [documents] to Ms. Weber, either one of these?

A. No, I did not until I had this stuff with me whenever we were at the funeral home. If she will be honest and/or remember, I said I have it in my mother's writing. And I actually had it in my bag.

Q. So you had it in your bag, but you never showed this to Ms. Weber, did you, these papers?

A. Because Ms. Weber said she – it says that –

Q. Did you ever show these documents to Ms. Weber?

A. No, I did not. I did not.

***

Q. But if you never showed it to Ms. Weber or to the funeral home, how do you expect them, what you claim are your mother's wishes, to be followed?

A. Because I told the funeral home director what was on the papers. I actually had the papers with me, whether Ms. Weber saw them or not . . . .

Fritch Deposition, p. 16, 24-25. Fritch cannot show Weber disregarded funeral

instructions listed on a document which Fritch admits she did not show Weber.

We reach a similar conclusion about a postmortem worksheet prepared by Chisholm. According to Chisholm's affidavit, the only funeral arrangements for Cravens he located after her death were the aforementioned funeral purchase agreement and the statement desiring a traditional burial, neither of which contains instructions about a wedding band. Thus, after Cravens died, Chisholm met with, among others, Weber and Fritch. Chisholm prepared a worksheet memorializing that meeting. Chisholm described the meeting and worksheet in his affidavit as follows:

> The family meeting took place at the funeral home. At no time did any person make any mention of any funeral directives or arrangements of the decedent except as noted above [the 2017 funeral purchase agreement and the 2004 letter asking for a traditional burial]. An information sheet was prepared setting forth the desire of the parties. In particular, the family indicated that they wanted the "wedding band saved" as noted under the column entitled "hair, clothing, jewelry". No other information was provided or offered by any person.

The information sheet was prepared by Chisholm after Cravens' death. Therefore, since the information sheet cannot contain funeral arrangements made by Cravens, any failure by Weber to comply with the information sheet cannot reasonably be deemed to have changed Cravens' funeral arrangements.

In any event, the information sheet does not plainly state that Cravens' body was to be wearing her wedding band at her funeral. The only

reference to the wedding band in the sheet is "save wedding band[.]" Fritch argues that phrase indicates Cravens wished to be wearing her wedding band at her funeral. However, the plain language meaning of "save" under these facts would be to "preserve or guard from injury, destruction or loss[.]" https://www.merriam-webster.com/dictionary/save (last visited May 15, 2025). In short, the plain meaning of "save wedding band" is to ensure the band was not interred with Cravens. Contrary to Fritch's arguments, the information sheet does not plainly state that Cravens' remains were to be wearing the wedding band at the funeral such that the trial court unquestionably committed an egregious, obvious, palpable error when it granted summary judgment to the Estate.

Finally, though Fritch alludes to Weber's purportedly having been made aware that Cravens wished her remains to be wearing her wedding band at the funeral, Fritch has not cited specific, clear evidence plainly showing how and when Weber was made aware of Cravens' alleged funeral arrangements regarding the wearing of the wedding band. "[S]ummary judgment is nevertheless appropriate in cases where the nonmoving party relies on little more than 'speculation and supposition' to support his claims." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010). Fritch vaguely alleges Weber knew of such an alleged arrangement regarding the wedding band but provides insufficient specific, supportive details to support that assertion to the

-11-

degree necessary for us to conclude the trial court committed a shocking, jurisprudentially intolerable error by granting summary judgment to the Estate.

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolving this appeal.

For the foregoing reasons, the Daviess Circuit Court's grant of summary judgment to the Estate of Bessie Cravens is affirmed.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
| --- | --- |
| Steven L. Boling<br>Owensboro, Kentucky | Ed Hodskins<br>Owensboro, Kentucky |