RENDERED: JUNE 6, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0199-WC

TENNCO ENERGY, INC.  APPELLANT


PETITION FOR REVIEW OF A DECISION
v.  OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. WC-19-01221, WC-19-001223, AND WC-19-01321


RICHARD LANE; HONORABLE
JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: Tennco Energy, Inc. appeals from an opinion

affirming an award of workers' compensation benefits. Appellant claims that the

administrative law judge (ALJ) who entered the award of benefits made errors in

his findings. And the Workers' Compensation Board (Board) erred in affirming.

We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

This case has already been before this Court and the Kentucky

Supreme Court; therefore, we will utilize the recitation of facts from the Supreme

Court.

> Richard Lane worked in Kentucky's coal mining industry for more than 30 years – all of them underground, where he was continuously exposed to coal dust. At the time Lane left the mining industry, and his employment with Tennco, in 2019, he operated a shuttle car in an underground coal mine from 3 a.m. to 3 p.m., six days a week.
>
> Lane has been diagnosed with [coal workers' pneumoconiosis (CWP)], commonly referred to as "black lung disease," on multiple occasions, and was first diagnosed as early as June 2003. Two workers' compensation claims Lane filed after contracting CWP are critical to this appeal.
>
> On December 22, 2005, Lane settled a CWP workers' compensation claim against his then-current employer, Simpson Mining, for $12,500. The settlement agreement reflected that Lane was occupationally exposed to coal dust for approximately 19 years, and that five physicians had assessed his condition using the International Labor Organization (ILO) standardized radiographic classifications of lung X-rays for diagnosing pneumoconiosis. Such classifications are used in categorizing the progress of a case of CWP, and, under Kentucky law, correspond to the amount of workers' compensation benefits to which an employee is entitled. *See generally* [Kentucky Revised Statutes (KRS)]

342.732(1)(a)-(b). The record indicates that of the five physicians that assessed Lane's condition prior to his 2005 settlement, three diagnosed him with CWP and two did not. Lane's *highest* CWP classification among his three diagnoses was reported as being category 1/1.

. . .

For the next 14 years, Lane continued to work in the coal mining industry for various employers where he was continuously exposed to coal dust. Lane began working for Tennco in 2009 and remained at Tennco until his last day of employment on January 21, 2019. Lane later testified at deposition that he ceased working at Tennco because of a mine fatality.

On July 11, 2019, an attorney representing Lane sent a letter of notice to Tennco, explaining that Lane would be filing a workers' compensation claim for CWP he contracted in Tennco's underground mines. Lane filed that claim on October 29, 2019. Pursuant to KRS 342.316(1)(a), "[t]he employer liable for compensation for occupational disease shall be the employer in whose employment the employee was last exposed to the hazard of occupational disease."

Around the time Lane filed his claim against Tennco, four physicians assessed his condition using the ILO classifications for diagnosing pneumoconiosis. Each diagnosed him with CWP – the earliest diagnosis coming on September 11, 2019, two months after Lane had noticed Tennco of his claim. Of these four diagnoses, Lane's *lowest* CWP classification was reported as being category 2/2. As such, the evidence presented to the ALJ tended to establish that Lane's CWP had gotten worse since he was last diagnosed in 2004.

. . .

Despite this evidence, Tennco argued, and the ALJ agreed, that Lane failed to give proper notice of his CWP claim under KRS 342.316(2), which states in part:

> [N]otice of claim shall be given to the employer as soon as practicable after the employee first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise the employee that he or she has contracted the disease, or a diagnosis of the disease is first communicated to him or her, whichever shall first occur.

> The ALJ concluded, as a matter of law, that Lane's prior diagnoses of CWP prior to his 2005 settlement necessarily rendered any notice Lane provided Tennco in 2019 as untimely. The Board reversed and remanded. The Court of Appeals affirmed the Board's decision.

*Tennco Energy, Inc. v. Lane*, 677 S.W.3d 445, 447-48 (Ky. 2023) (emphasis in original).

The issue before the Kentucky Supreme Court was for it to determine at what point does a workers' compensation claimant need to inform his or her employer of an impending CWP claim pursuant to KRS 342.316(2) when that claimant has previously been diagnosed with CWP and been awarded benefits for it from a previous employer. The Court also had to determine if a claimant could even bring this subsequent claim for CWP benefits against a new employer. First, the Court held that "any claimant who has previously been diagnosed with CWP, concluded a prior claim for benefits, and now seeks subsequent CWP benefits against a new employer must demonstrate that he has suffered a harmful change in

-4-

his condition attributable to his time with his new employer[.]" *Id.* at 450

(footnote omitted).

> The Court went on to hold that
>
> > a claimant's own awareness of such change is the event that should trigger his statutory obligation to provide notice of an impending claim to his employer. In other words, awareness of such change gives the claimant "knowledge" of his own potentially compensable condition. . . .
> >
> > In holding as we do, this Court does not wish to place the average CWP claimant in the role of physician – always bound to investigate the severity of his or her inherently progressive CWP symptoms in an effort to salvage the viability of some potential workers' compensation claim. Rather, the touchstone of this analysis should be whether a claimant was *reasonably* apprised he or she had sustained a harmful change in his CWP.
> >
> > This Court has already interpreted KRS 342.316(2)'s requirement to give notice "as soon as practicable" after having knowledge of a CWP diagnosis to mean "within a reasonable time under the circumstances of each particular case." *Peabody Coal Co. v. Harp*, 351 S.W.2d 170, 172 (Ky. 1961). As applied to claimants with prior diagnoses of CWP, giving notice of a subsequent claim only after having knowledge of some subsequent harmful change is the only reasonable time to provide notice under such circumstances. Otherwise, such claimants would be forced to give notice of their prior CWP diagnosis to all future employers as soon as they received that initial diagnosis, a sheer impossibility.

*Id.* at 450-51 (internal quotation marks and citation omitted) (emphasis in original).

The Court further expressed

no opinion as to whether that harmful change must be a "progression" in ILO category, the onset of new CWP symptoms, an increase in respiratory impairment, or any other harm we have yet to conceive. We decline to make such an exacting holding because it is not for this Court to dictate what evidence might comprise a successful claim for workers' compensation benefits. Rather, we only observe that there must be *some* evidence.

*Id.* at 450 (emphasis in original).

As for Mr. Lane specifically, the Court concluded:

Lane was not required to notify Tennco of his impending claim until he himself was cognizant of the harmful change in his CWP condition he sustained as a result of his employment. Here, the record establishes that Lane left his employment with Tennco because of a fatality at the mine, not because he realized he had suffered a harmful change in his CWP as a result of his employment. In fact, when asked about his CWP symptoms at his 2020 hearing Lane testified that his CWP did not restrict his ability to work during his last two years with Tennco. It seems to this Court that the record indicates the only concrete notice Lane received as to his changed condition was his eventual diagnosis of Category 2/2 CWP on September 11, 2019 – two months after he had already given notice to Tennco. . . .

The record does indicate, however, that Lane was experiencing shortness of breath as a result of his CWP, and that he was using an inhaler to treat his CWP symptoms. Whether these limited facts could have reasonably apprised Lane that he had experienced a harmful change in his CWP condition is simply unclear. This Court is not a fact-finding court, thus we are constrained to remand this case to the ALJ for findings of fact sufficient to determine when Lane was, or should have been, reasonably apprised he had sustained a harmful change in his CWP, and, ultimately, whether his

-6-

> July 2019 notice to Tennco was given "as soon as practicable" afterward.

*Id.* at 451.

The case was then remanded back to the ALJ. On remand, the ALJ held that Mr. Lane's July 11, 2019, letter giving notice of his intent to seek benefits was timely. The ALJ believed that the CWP symptoms Mr. Lane testified to were "indistinguishable from those associated with his prior diagnosis of simple [CWP] and are thus not sufficient to apprise him of a progression of his condition constituting a harmful change related to his most recent employment with [Tennco]." The ALJ further concluded that, based on the evidence, Mr. Lane first became aware of a harmful progression of his CWP when he was formally diagnosed by a doctor with a worsening of the condition on September 11, 2019.[1]

Tennco then appealed to the Board. The Board reversed and remanded back to the ALJ. The Board held that the ALJ "failed to set forth the lay and/or medical testimony supporting his conclusory statement Lane's shortness of breath and use of an inhaler are symptoms 'indistinguishable' from those he experienced before his CWP had worsened while in Tenneco's employ." The

---

[1] Our Supreme Court discussed the fact that Mr. Lane gave notice of his intent to seek benefits on July 11, 2019, even though he was not diagnosed with a worsening condition until two months later. The Court held that nothing prevents an employee from giving an employer notice of a potential work injury before the law requires him or her to and before a doctor confirms the injury. *Id.* at 451.

Board believed that the ALJ did not satisfy the Supreme Court's remand mandate.

The Board directed the ALJ to pinpoint when Mr. Lane knew, or should have

reasonably known, that his condition had worsened. Then the ALJ should

determine if the July 11, 2019 notice was given to Tennco as soon as practicable as

required by KRS 342.316(2).

> On remand to the ALJ, the ALJ held:
>
> The ALJ further finds that while the Plaintiff testified to experiencing symptoms including shortness of breath causing him to use an inhaler, the symptoms as described were not sufficient to apprise the Plaintiff of a progression of his condition constituting a harmful change related to his most recent employment. The ALJ is thus compelled to find that the diagnosis was first communicated to him by Dr. [Kathleen] DePonte on September 11, 2019, for the purposes of providing notice. Accordingly, the ALJ finds that the Plaintiff's giving of notice via certified letter dated July 11, 2019, was timely per the statute.

Tennco then filed a petition for reconsideration and argued, among

other things, that the ALJ still had not met the Supreme Court's mandate. It

requested additional findings regarding when Mr. Lane was reasonably apprised of

a change in his condition sufficient enough to trigger the notice requirement. The

ALJ denied the petition but entered an amended opinion with additional findings of

fact. In paragraphs 25 and 26 of the amended opinion, the ALJ stated:

> 25. The ALJ further finds that while the Plaintiff testified to experiencing symptoms including shortness of breath causing him to use an inhaler, it remains unclear

whether the symptoms as described were sufficient to apprise Lane of a progression of his condition constituting a harmful change related to his most recent employment. The Plaintiff testified to these symptoms in the present tense on July 20, 2020, and at no time indicated when these symptoms started, nor was he asked.

26. It is undisputed that the Plaintiff continued to work in coal until a death occurred in the mine in January of 2019. He has also established that he was advised by a physician of the progression of his coal workers' pneumoconiosis condition on September 11, 2019. The ALJ is thus compelled to find that the diagnosis was first communicated to him by Dr. DePonte on September 11, 2019, for the purposes of providing notice. The ALJ is further compelled to reference that his present tense admission that he was experiencing symptoms on July 20, 2020, cannot provide the basis for a finding that he was having symptoms sufficient to apprise him of a progression of his condition triggering his obligation to give notice at any identifiable point prior to July 11, 2019. Accordingly, the ALJ finds that the Plaintiff's giving of notice via certified letter dated July 11, 2019, was timely per the statute.

Tennco then appealed to the Board once again and argued that Mr. Lane's CWP symptoms should have put him on notice of a worsening condition and required him to give notice before July 11, 2019. To support its argument, Tennco relied on Mr. Lane's testimony at the workers' compensation hearing and on some medical records indicating Mr. Lane had CWP symptoms in December of 2018 and early 2019. On January 16, 2025, the Board entered an opinion and order affirming the ALJ's opinion. The Board held that the evidence did not

compel a finding that Mr. Lane had such a worsening of symptoms prior to the

July 11, 2019 notice that would have required him to give notice earlier. The

Board affirmed the ALJ's conclusion that Mr. Lane's testimony only discussed his

present symptoms and not any symptoms from the past. This appeal followed.

## STANDARD OF REVIEW

"The function of further review of the [Board] in the Court of Appeals

is to correct the Board only where the . . . Court perceives the Board has

overlooked or misconstrued controlling statutes or precedent or committed an error

in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist*

*Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

> KRS 342.285 designates the ALJ as the finder of fact.
> *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418
> (Ky. 1985), explains that the fact-finder has the sole
> authority to judge the weight, credibility, substance, and
> inferences to be drawn from the evidence. *Special Fund
> v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986), explains
> that a finding that favors the party with the burden of
> proof may not be disturbed if it is supported by
> substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008).

> Substantial evidence is defined as evidence, taken alone
> or in light of all the evidence, that has sufficient
> probative value to induce conviction in the minds of
> reasonable people. If there is substantial evidence to
> support the agency's findings, a court must defer to that
> finding even though there is evidence to the contrary. A
> court may not substitute its opinion as to the credibility
> of the witnesses, the weight given the evidence, or the

-10-

inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes and citations omitted). "[A]n administrative agency's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *Hutchison v. Kentucky Unemployment Ins. Comm'n*, 329 S.W.3d 353, 356 (Ky. App. 2010).

## **ANALYSIS**

Tennco's first argument on appeal is that the ALJ still has not met the Supreme Court's mandate to determine when Mr. Lane knew or should have known of a harmful change in his condition. Tennco also argues that the ALJ ignored medical records and testimony that indicated Mr. Lane had worsening symptoms for some time prior to July 11, 2019, the date of his notice.

Mr. Lane provided testimony twice in this case, once during a deposition and once during a hearing. He was not asked any questions regarding his CWP during the deposition.[2] During the hearing, the following was the extent of the questioning regarding his CWP:

> Q. Symptomatically, with your Black Lung now, Mr. Lane, can you describe your symptoms with that?
>
> A. Oh, I'll have shortness of breath. I have to sit down

---

[2] Mr. Lane also sought benefits for other injuries, but those are not before us.

-11-

sometimes just to catch my breath. You know, and as far as getting – I don't know how to say it here.

Q. Take your time.

A. I get really winded really quick as in walking and stuff. I have to stop and catch my breath and it – it takes a lot out of me.

Q. Is there any treatment that you're able to take at this time for the Black Lung?

A. I've been taking an inhaler, a rescue inhaler every day. And that's what I've been doing with that right now.

Q. How frequently do you find yourself having to use a rescue inhaler?

A. At least, once or twice a day.

Q. Does that seem to provide you some relief?

A. Yes.

The ALJ held, and the Board agreed, that there was insufficient evidence to prove the severity of Mr. Lane's CWP symptoms prior to the July 11, 2019 notice; therefore, it was impossible to determine when he first knew, or should have known, when his condition progressed to such a degree as to trigger the notice requirement. We agree.

After a review of the record in this case, we were unable to find any medical records prior to December of 2018 that mention Mr. Lane's CWP. There are some records from December of 2018 and early 2019 that indicate Mr. Lane

-12-

was having some symptoms of CWP, but there were also some records from early and mid-2019 that indicated he was having zero symptoms. Furthermore, Mr. Lane has been diagnosed with CWP since 2003, but was not asked any questions about whether he suffered symptoms from 2003 to the workers' compensation hearing held in July of 2020. He was only questioned about present day symptoms. Without knowing how his symptoms progressed, it is impossible to determine if he should have known he was getting worse to such an extent that the notice requirement was triggered. We agree that Mr. Lane was first put on notice that his CWP symptoms had progressed in September of 2019; therefore, his July 11, 2019 notice to Tennco was timely pursuant to KRS 342.316(2).

The focus of this opinion up to this point has been the notice requirement; however, Tennco has raised another issue on appeal. Mr. Lane was examined by multiple doctors relating to his CWP. Tennco argues that the ALJ erred in relying on the medical opinion and report of Dr. DePonte as opposed to the opinion and report of Dr. Byron Westerfield. Tennco bases this argument on KRS 342.315, which states in relevant part:

> (1) For workers who have had injuries or occupational hearing loss, the commissioner shall contract with the University of Kentucky and the University of Louisville medical schools to evaluate workers. For workers who have become affected by occupational diseases, the commissioner shall contract with the University of Kentucky and the University of Louisville medical schools, or other physicians otherwise duly qualified as

"B" readers who are licensed in the Commonwealth and are board-certified pulmonary specialists. Referral for evaluation may be made whenever a medical question is at issue.

(2) The physicians and institutions performing evaluations pursuant to this section shall render reports encompassing their findings and opinions in the form prescribed by the commissioner. Except as otherwise provided in KRS 342.316, the clinical findings and opinions of the designated evaluator shall be afforded presumptive weight by administrative law judges and the burden to overcome such findings and opinions shall fall on the opponent of that evidence. When administrative law judges reject the clinical findings and opinions of the designated evaluator, they shall specifically state in the order the reasons for rejecting that evidence.

Dr. Westerfield was a physician described by KRS 342.315 and Tennco argues that the ALJ erred by not giving Dr. Westerfield's opinion presumptive weight.

KRS 342.315(2) does not evince a legislative intent for the clinical findings and opinions of a university evaluator to be conclusive. It anticipates that the opponent of a university evaluator's report may introduce countervailing evidence which will overcome the report; furthermore, KRS 342.315(2) does not prohibit the fact-finder from rejecting a finding or opinion of a university evaluator but requires only that the reasons for doing so must be specifically stated.

*Magic Coal Co. v. Fox*, 19 S.W.3d 88, 94-95 (Ky. 2000).

Here, the ALJ specifically stated that it considered Dr. Westerfield's opinion and report but found Dr. DePonte's more persuasive. Dr. Westerfield examined chest x-rays of Mr. Lane in order to reach his conclusions. Dr. DePonte,

however, examined CT scans of Mr. Lane. Dr. DePonte explained that CT scans are more reliable because they have greater sensitivity and specificity than x-rays. The ALJ believed this increased accuracy was sufficient to overcome the presumptive weight of Dr. Westerfield's opinion. We agree. The ALJ explained why it was relying on Dr. DePonte's opinion and found her diagnosis the most credible. As the fact-finder, the ALJ determines what evidence is more credible and persuasive and we are not permitted to reweigh the evidence. Even though there is some other evidence that may support Tennco's position, we will not disturb the ALJ's factual findings.

## CONCLUSION

Based on the foregoing, we affirm the decision of the Board and ALJ.


ALL CONCUR.


BRIEF FOR APPELLANT:

W. Barry Lewis
Hazard, Kentucky

BRIEF FOR APPELLEE RICHARD LANE:

John Hunt Morgan
Harlan, Kentucky